**Dated: April 10, 2020**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FDV Artfolio LLC, | ) | Case No. 19-11661-JDL |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| Douglas N. Gould, Trustee, | ) | |
| | ) | Adversary Proceeding |
| Plaintiff, | ) | Case No. 19-01100-JDL |
| V. | ) | |
| | ) | |
| BOKF, N.A., d/b/a Bank of | ) | |
| Oklahoma, N. A., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

**I. Introduction**

Pursuant to 11 U.S.C. § 542(a)[1], the Chapter 7 Trustee brought this adversary

---

[1] All further references to "Code", "Section", and "§" are to the United States Bankruptcy Code, Title 11 U.S.C. § 101 *et seq*., unless otherwise indicated.

proceeding seeking an order from the Court for the Debtor's former bank to turnover $118,963.68 representing the amount of a cashier's check issued by the bank with funds from the Debtor's bank account and upon which the bank stopped payment.  Due to a dispute between the principals of the Debtor as to payment of the check, the bank has been holding the amount of the check in a suspense account during the pendency of a decade-long state court action between and amongst it, the Debtor and the former principals of the Debtor.  In this turnover action, the Trustee has moved for summary judgment seeking determination that the disputed funds are property of the bankruptcy estate.  The bank opposes the Trustee, both as to the turnover action and the Motion for Summary Judgment, on the basis that the state court has already determined that the disputed funds do not belong to the Debtor.  Before the Court for consideration are the *Plaintiff's Motion for Summary Judgment* (the "Motion") [Doc. 17], *Defendant BOKF, N.A.'s Response to Motion for Summary Judgment* (the "Response") [Doc. 18], and *Plaintiff's Reply to Defendant's Response to Motion for Summary Judgment* (the "Reply") [Doc. 19]. The following represents the Findings of Fact and Conclusions of Law required by Fed. R.Bankr.P. 7052 and 9014[2] upon which the Court's Order is based.

## II. Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Order of Reference of the United States District Court for the Western District of Oklahoma as Local Rule LCvR 81.4(a).  Furthermore, pursuant to Rule 7008, the

---

[2] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

Trustee in his *Complaint for Turnover* [Doc. 1, ¶ 3] and, pursuant to Rule 7012(b), BOKF, N.A. in its *Amended Answer to Complaint for Turnover* [Doc. 5, ¶ 3], have both consented to entry of final orders or judgment by the bankruptcy court. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(E)(orders to turn over property of the estate).

### III. Statement of the Case-Undisputed Material Facts

The material facts of this case are not in dispute:[3]

1. In or around December 2008, Fabrice Vallet de Villeneuve ("Villeneuve") and Shirin Asghari ("Asghari") agreed to form FDV Artfolio, LLC, ("FDV"), the Debtor in this case. Villeneuve owned ninety percent (90%) of FDV, and Asghari owned ten percent (10%). Asghari served as President and Operating Manager of FDV.

2. On or about January 6, 2009, Asghari and her husband, Michael Igleheart ("Igleheart"), opened a checking account in the name of FDV at BOKF, N.A. ("BOK"). Asghari listed herself on the account as President and Igleheart as "Consultant." Both had signatory authority on the account.

3. On or about August 31, 2011, Igleheart issued a check on the FDV account payable to Asghari in the amount of $117,531.91. On August 31, 2011, Asghari deposited the check in her bank account at MidFirst Bank.

4. Villeneuve, claiming fraud on the part of Asghari and Igleheart, had an attorney contact representatives of BOK and requested that a freeze be placed on the FDV account.

---

[3] In its Response to the Motion, the Bank stated that it "does not dispute the ten facts enumerated in the portion of the Trustee's Motion under the heading 'Material Facts Not In Dispute.'" The Bank asserts that "those facts are, however, materially incomplete and therefore misleading." [Doc. 18, pg. 5]. The Bank's statement of facts is supported by exhibits, and to the extent those facts are material, the Court is including them in its findings.

BOK temporarily placed the FDV account in "credit only" status, but cleared the check after confirming that Igleheart and Asghari were the authorized signatories on the FDV account. Neither the Trustee nor BOK assert a claim to the $117,531.91 in this action.

5.   On September 2, 2011, using funds in the FDV account at BOK, Igleheart, as remitter, purchased an "Official Check" (cashier's check) drawn on BOK in the amount of $118,963.68 payable to Asghari (the "Disputed Funds").  On or about September 6, 2011, Asghari deposited the BOK cashier's check into an account in her name at MidFirst Bank.

6. Villeneuve, as 90% owner of FDV, revoked Asghari and Igleheart's signatory authority on the FDV account at BOK, and advised BOK that Igleheart and Asghari had fraudulently withdrawn funds from the FDV account with which they purchased the cashier's check.   Acting on Villeneuve's request, on September 9, 2011, BOK stopped payment on the cashier's check which Asghari had deposited in her account at MidFirst Bank and "charged back" the provisional credit in Asghari's account.  The Chargeback on the BOK cashier's check resulted in the Disputed Funds being credited to a BOK general ledger account where they remain today and are the subject of this adversary proceeding.

7. In December 2012,  FDV and Villeneuve brought suit in Oklahoma County District Court against BOK alleging that BOK had breached its contractual obligation and fiduciary duty by (1) "unfreezing" FDV's bank account and honoring the $117,531.91 check which Igleheart had made payable to Asghari on August 30, 2011, and (2) while stopping payment on the second check in the amount of $118,963.68, placing it in a suspense account and refusing to re-deposit it back in FDV's account pending the outcome of the

litigation between the parties.[4]  BOK continues to hold the funds to this day.

8. In 2013, FDV and Villeneuve brought suit against Asghari and Igleheart in the District Court of Oklahoma County asserting claims of (1) breach of fiduciary duty, (2) breach of contract, (3) conspiracy to breach fiduciary duty, (4) misappropriation of trade secrets, (5) fraud/deceit/false representation and (6) chose/thing in action.[5]  Asghari and Igleheart filed counterclaims against FDV and Villeneuve based upon (1) indebtedness for unpaid commissions, (2) breach of contract, (3) breach of fiduciary duty and (4) accounting. FDV and Villeneuve filed a Motion for Summary Judgment, and Asghari and Igleheart filed Motions for Partial Summary Judgment on their counterclaims.

9. On May 24, 2018, the District Court entered its Order Granting Motions for Partial Summary Judgment by which it denied FDV's and Villeneuve's Motion for Summary Judgment and granted Asghari and Igleheart's Motion for Partial Summary Judgment.  The State Court's Order found, in pertinent part:

> "2.  Defendants' Motion on Plaintiffs' Claims is GRANTED. The Court further finds that the facts are not disputed in a material way which would permit any claim asserted by Plaintiffs/Counterclaim Defendants to go to a jury and hereby enters summary judgment in favor of Defendants/Counterclaim Plaintiffs on all claims asserted against them by Plaintiffs/Counterclaim Defendants.
>
> 3.  Defendants' Motion on Their Counterclaims is GRANTED.

---

[4] *FDV Artfolio, LLC, and Fabrice Vallet de Villeneuve, Plaintiffs v. Bank of Oklahoma, a Foreign Trade Name Entity of BOKF, N.A., Defendant, Case No. CJ-2012-7757.*

[5] *Fabrice de Villeneuve, an individual, and FDV Artfolio, LLC, an Oklahoma Limited Liability Company, Plaintiffs v. Shirin Asghari and Michael Igleheart, Defendants, Case No. CJ-2013-229.* This action was subsequently consolidated with *Case No. CJ-2012-7757* by order of the court in January 2016 (the "State Court Action").

> In accordance with the rulings stated above, the Court finds that the only issue left for trial is the amount of damages incurred by Defendants/Counterclaim Plaintiffs with regard to actions taken by Plaintiff/Counterclaim Defendant Fabrice Vallet de Villenneuve."[6]

10.   The State Court jury trial on the issue of damages to be awarded Asghari as against FDV and Villeneuve was scheduled to begin on April 29, 2019.  On April 25, 2019, FDV filed for relief under Chapter 7 of the United States Bankruptcy Code.

### IV. Summary Judgment Standards

It is appropriate to grant a motion for summary judgment when the pleadings and other materials in the record, together with supporting affidavits, if any, demonstrate that there is no genuine dispute with respect to any material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding by Rule 7056.  "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).  Courts must review the evidentiary material submitted in support of the motion for summary judgment to ensure that the motion is supported by evidence.  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden, then summary judgment must be denied.

When considering a motion for summary judgment, the court views the record in the light most favorable to the party opposing summary judgment.  *See Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991) (the

---

[6] This Court is entitled to take judicial notice of both its own and other state or federal docket sheets. *United States v. Ahidley,* 486 F.3d 1184, 1192, n. 5 (10th Cir. 2007).

6

court "must view the record in a light most favorable to the parties opposing the motion for summary judgment."); *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).  No genuine issue of fact exists if a rational fact finder, when viewing the record as a whole, could not find for the party opposing the summary judgment.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.").  "[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

### V. Discussion

The Trustee brought this adversary proceeding pursuant to 11 U.S.C. § 542(a) which requires all entities, other than custodians, having possession, custody or control of property that the trustee could use, sell or lease pursuant to § 363 to deliver that property to the trustee and to account for the property or the value of the property.  *See generally United States v. Whiting Pools, Inc.* 462 U.S. 198, 205-08, 103 S.Ct. 2309 (1983).  The Trustee seeks BOK to turnover to him the $118,963.68 which it has been holding in a general ledger account since September 2011.

To support a cause of action for turnover, the trustee has the burden of proof, by a preponderance of the evidence, to establish that: (1) the property is in the possession, custody or control of a non-custodial third-party; (2) the property constitutes property of the estate; (3) the property is of the type that the trustee could use, sell or lease pursuant to § 363 and (4) that the property is not an inconsequential value or benefit to the estate.  *In*

7

*re Lee*, 415 B.R. 518, 523 (Bankr. D. Kan. 2009).  It does not appear disputed that three of the four elements for turnover are present.  At issue is the element that the Trustee must prove that the funds are "property of the bankruptcy estate."  The Trustee says they are. BOK says the $118,000 which it is holding is not property of the estate, and, furthermore, that the State Court Action determined that the funds represented by the cashier's check did not belong to FDV, and the State Court judgment should be given preclusive effect in this adversary.

### A. Whether the Funds Representing the Cashier's Check Upon Which Payment Was Stopped by BOK Constitute Property of the Bankruptcy Estate

"Property of the estate" is broadly defined under the Bankruptcy Code.  Pursuant to § 541, the commencement of a bankruptcy case creates an estate.  In relevant part, § 541(a)(1) of the Bankruptcy Code provides that "[s]uch estate is comprised of the following property, wherever located and by whomever held," including "... all legal or equitable interests of the debtor in property as of the commencement of the case."  The Trustee argues that the funds which BOK is holding representing the proceeds of its cashier's check purchased by FDV, issued by BOK payable to Asghari upon which BOK stopped payment, constitutes property of the bankruptcy estate.  Stated otherwise, the Trustee argues that until such time that final payment of the check representing the Disputed Funds was made to the payee, Asghari, the Disputed Funds remain the property of FDV.

The law is now well established that funds representing checks written and delivered pre-petition, yet uncashed or not honored, are property of the bankruptcy estate as of the filing of the Chapter 7 petition.  *See e.g., In re Ruiz,* 455 B.R. 745, 749 (10th Cir. BAP 2011);

*In re Brubaker*, 443 B.R. 176, 180 (M.D. Fla. 2011); *In re Taylor,* 332 B.R. 609, 610-11 (Bankr. W.D. Mo. 2005); *In re Yoon*, 399 B.R. 34 (N.D. Ind. 2008); *In re Parker*, 2008 WL 906570, *4 (Bankr. N.D. N.Y. 2008). If this case involved the normal check transaction represented by the above cases, there would be no question that the Court would find that the Disputed Funds remain property of the estate.[7] In the present case, however, the facts are somewhat different from the normal situation where the debtor issues a check to a payee. Here, rather than FDV writing a check directly to its payee (Asghari), there was the intermediate step of FDV purchasing a cashier's check which was then delivered to Asghari but upon which BOK stopped payment. All of this occurred seven years pre-petition.[8] Does that intermediate step of obtaining a cashier's check change the result that the funds represented by the cashier's check remain the property of the bankruptcy estate unless and until final payment of the check, an event which in this case did not take place?[9]

In *In the Matter of USA Rent-A-Car/Florida, Inc.*, 149 B.R. 695, (Bankr. M.D. Fla.

---

[7] This result is compelled by the Oklahoma Uniform Commercial Code which provides that the issuance of the check by itself does not operate as an assignment of funds in the hands of the drawee bank. 12A O.S. § 3-408. As the Official Comments to § 3-408 state: "This Section is in agreement with the result in *Barnhill v. Johnson,* 112 S.Ct. 1386 (1992), which held that for purposes of a preferential transfer under Bankruptcy Code Section 547(b), a transfer made by check is deemed to occur on the date the check is honored by the drawer's bank, rather than the date it comes into the payee's hands."

[8] Neither party has addressed the fact that this was not the typical situation involving a check written to a payee on the debtor's account but a two-step transaction involving the Debtor withdrawing funds from its account to purchase a cashier's check payable to the payee.

[9] Under the Oklahoma Uniform Commercial Code, Title 12A O.S. § 4-215(a), an item is "finally paid" when the bank has first done any of the following (1) paid the item in cash; (2) settled for the item without having a right to revoke the settlement under statute, clearing-house rule, or agreement; or (3) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing-house rule, or agreement. None of those events occurred here as BOK stopped payment on the check.

1992), the plaintiff-trustee sought to recover as a post-petition transfer under § 549 four cashier's checks made payable to, and held by, the payee-Internal Revenue Service.  In holding that the IRS was to turnover the cashier's checks to the Trustee, the court found that "[S]ince the cash used to purchase the cashier's checks is property of Debtor's estate, the cashier's checks themselves are property of Debtor's estate." *Id.* at 698.  The issue presented by this case appears to be one of first impression: where the debtor is a purchaser of a cashier's check upon which payment is stopped by the issuing bank pre-petition, are the funds represented by the check property of the estate?

BOK asserts that the "Trustee incorrectly assumes, without citing any evidence, that the check issued to Ms. Asghari was never honored and that the disputed funds remained in FDV's account ... .  The Disputed Funds were removed from FDV's checking account no later than September 6, 2011, and then deposited into an account belonging to Ms. Asghari at MidFirst Bank." [Doc.18, pg. 8].  The facts are, however, somewhat more nuanced.  FDV purchased the cashier's check with funds from its account.  At that point, BOK became a mere conduit to transfer the funds to Asghari as payee.  The cashier's check was deposited at MidFirst Bank, and BOK, at the request of FDV's majority owner, Villenueve, claiming that Igleheart and Asghari fraudulently purchased the cashier's check, had BOK stop payment on it.

The above-cited cases holding that a check remains property of the estate until it is honored were derived by analogy of the Supreme Court decision in *Johnson v. Barnhill,* 503 U.S. 393, 112 S.Ct. 1386 (1992), which held, that at least for purposes of avoidance of a preferential transfer under § 547(b), "transfer" occurred only when the debtor directed his bank to honor the check, and the bank, in fact, did so. *Id.* at 401.  Likewise, cases applying

10

*Barnhill*, have held that for fraudulent transfer purposes under § 544(b) and the recovery of the transferred property for the estate under § 550(a), the debtor's purchase of a cashier's check does not make the issuing bank the "initial transferee" against whom the trustee may always recover regardless of good faith, value, or lack of knowledge of the voidability of the transfer. *Rupp v. Markgraf,* 95 F.3d 936 (10th Cir. 1996). In *Rupp,* the court found that the bank issuing the cashier's check was regarded as a mere "conduit" for the transaction for purposes of §§ 544 and 550 because it never exercised "dominion or control over the money or other asset, the right to put the money to one's own purposes" but merely to pass the funds from the purchaser to the payee. *Id.* at 939 (adopting the holding of *Malloy v. Citizens Bank of Sapulpa (In re First Security Mortgage Co.)*, 33 F.3d 42 (10th Cir. 1994)).

In *In re Essex Construction, LLC*, 575 B.R. 648 (Bankr. D. Md. 2017), the issue before the court was the approval of a proposed settlement under Rule 9019. The settlement revolved around claims by the trustee to avoid post-petition transfers under § 549 as well as claims between other parties to the related transactions. Amongst the issues presented was whether a "transfer" occurred, for unauthorized post-petition transfer avoidance purposes, where the debtor obtained a cashier's check from its bank. As in the present case, the debtor later convinced the bank to stop payment on the cashier's check. The bankruptcy court found that the delivery of the cashier's check to the payee was a "conditional transfer" that could not provide the basis for an avoidance under § 549 where "the check was never honored." The Court did find, however, that there was an avoidable transfer which the Trustee could recover where the debtor stopped payment on the cashier's check and the bank retained the funds.

Certainly, BOK cannot, and does not, argue that the funds represented by the check

are its property.  Neither are the funds property of the payee where the check was never honored.  The payee, Asghari, might have a claim to the funds, but such a claim can and should be adjudicated by the claims process in the bankruptcy proceeding.  The Court thus finds that the Disputed Funds are property of the bankruptcy estate.

### B. Whether the Judgments in the State Court Action Between and Amongst the Debtor, BOK and Third-Parties Preclude the Trustee for the Debtor from Claiming the Funds held by BOK as Property of the Estate

### 1. Issue Preclusion

The doctrine of issue preclusion bars relitigation of determinations necessary to the ultimate outcome of a prior proceeding.  *Bobby v. Bies*, 556 U.S. 825, 829, 129 S.Ct. 2145, 2149 (2009).  Issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit. *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009).  The Full Faith and Credit Statute, 28 U.S.C. § 1738, directs federal courts to look to the preclusion law of the state in which a judgment is rendered.  *Cobb v. Lewis (In re Lewis)* 271 B.R. 877, 883 (10th Cir. BAP 2002), citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327 (1985).  Under Oklahoma law, the doctrine of issue preclusion has been stated as follows:

> "Under the doctrine of issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate the issue in a suit brought for a different claim.... Issue preclusion prevents relitigation of facts and issues *actually litigated* and *necessarily determined* in an earlier proceeding between the same parties or their privies. An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.... An issue is necessarily determined if the judgment would not have been rendered but for the determination of that issue. Additionally, the party

12

> against whom issue preclusion is interposed must have had a
> 'full and fair opportunity' to litigate the critical issue in the earlier
> case."

*Nealis v. Baird*, 1999 OK 98, 996 P.2d 438, 457-58 (Emphasis original); *Brady v. UBS*

*Financial Services, Inc.*, 538 F.3d 1319, 1327 (10th Cir. 2008) ("Under Oklahoma law, the

elements of res judicata or claim preclusion, are "1) an identity of subject matter, of the

parties or their privies, of the capacity of the parties and of the cause of action; 2) the court

which heard the original action must have been one of competent jurisdiction; and 3) the

judgment rendered must have been a judgment on the merits of the case and not upon

purely technical grounds."). *See also, Miller v. Miller,* 1998 OK 24, 956 P.2d 887, 897;

*Oklahoma Department of Public Safety v. McCrady,* 2007 OK 39, 176 P.3d 1194, 1199,

citing *State ex rel. Oklahoma Bar Association v. Giger,* 2004 OK 43, 93 P.3d 32, 38.  To be

granted preclusive effect, the judgment must be final and not subject to reconsideration or

amendment.  *Brady*, 538 F.3d at 1327; *Panama Processes, S. A. v. Cities Service Co.*, 1990

OK 66, 796 P.2d 276, 283 ("Under the doctrine of res judicata, only terminal judicial rulings

... are given preclusive effect.").

#### (a). The State Court Litigation Between FDV and BOK

In order to determine whether the State Court proceedings have any preclusive effect

in this adversary before the Court it is necessary to analyze exactly what were the issues

litigated and decided in the State Court.  As stated above, in 2012 FDV and Villeneuve

brought suit in Oklahoma District Court against BOK asserting claims for (1) breach of

contract (2) breach of duty based upon BOK's alleged failure to timely "freeze and secure

the funds in FDV's account" which resulted in the release of $235,000 from the account.

[Doc. 18, Ex. A, State Court Petition].   The $235,000 claim was comprised of the

13

approximate $117,000 check written on the FDV account by Igleheart and payable to Asghari which was honored and the approximate $118,000 cashier's check purchased with FDV funds and payable to Asghari upon which BOK stopped payment. There was no claim by FDV for possession or turnover of the $118,000 which BOK was holding in its suspense account.[10]

In the State Court Action BOK moved for summary judgment on the basis that (1) the relationship between FDV and BOK was governed by the provisions of the Depository Agreement which included Asghari and Igleheart as authorized signatories and provided that in the event of a dispute as to ownership of the account BOK had sole discretion whether or not to freeze the account, (2) BOK's payment of the $117,000 check was in accordance with the Depository Agreement, (3) as a matter of Oklahoma law there was no breach of the implied covenant of good faith and fair dealing giving rise to a claim in tort, and (4) under Oklahoma law there was no viable theory of breach of fiduciary duty between a bank and its customer.

On May 24, 2018, the District Court, quite properly, granted BOK's Motion for Summary Judgment that it had no liability to FDV or Villeneuve. The Court's Order made no specific findings of fact, simply reciting that based upon its review of the pleadings, briefs and oral argument "there are no material issues of facts and concludes that defendant BOFK, NA d/b/a Bank of Oklahoma is entitled to summary judgment as a matter of law" and "all claims and actions against [BOK] having been resolved, it is therefore dismissed

---

[10] As a matter of Oklahoma law, there is no cause of action in replevin for possession of money. *Hopkins v. West*, 2009 OK CIV APP 104, 229 P.3d 560; *Brook v. James A. Cullimore & Co.*, 1967 OK 251, 436 P.2d 32.

14

from the action." There was no determination as to who was entitled to possession of the $118,000 which it was holding (and continues to hold).

The transcript of the hearing on BOK's Motion for Summary Judgment likewise reveals that the District Court was only sustaining the Motion because as a matter of law FDV and Villeneuve could not sustain a claim of liability against BOK:

> THE COURT: *** I'm going to sustain the Defendant BOKF's Motion for Summary Judgment with regard to the account. And for the reasons that we have discussed, the signatories on the account were the ones who took the money out of the account and managed the account.
>
> There was no evidence that Mr. Villeneuve was entitled to anything, other than the treatment that he received from the bank in this regard, absent anything other than just a phone call and an email. And that the Defendants Asghari and Mr. Igleheart were signatories on the account with the full right to do what they did.
>
> And, so, I don't see how that incurs any liability to the bank.

[Doc. 18-4, pgs. 16-17].

This Court finds that the issue of whether FDV had a property interest in the funds held by BOK entitling it to possession of the same was not litigated and adjudicated in the FDV action against BOK so as to be entitled to preclusive effect in this adversary.

### (b). The State Court Action Between FDV and Villeneuve Versus Asghari and Igleheart

The next issue is whether the State Court litigation between FDV and Villeneuve, on the one hand, and Asghari and Igleheart, on the other hand has any preclusive effect upon this adversary as claimed by BOK. That action, which was administratively consolidated with the BOK action, was brought by FDV and Villeneuve asserting claims of (1) breach of fiduciary duty, (2) breach of contract, (3) misappropriation of trade secrets

15

(4) fraud/deceit/false representation and (5) chose/thing in action.  Asghari and Igleheart filed counterclaims against FDV and Villeneuve based upon (1) indebtedness for unpaid commissions, (2) breach of contract, (3) breach of fiduciary duty and (4) accounting.  FDV and Villeneuve filed a Motion for Summary Judgment, and Asghari and Igleheart filed Motions for Partial Summary Judgment on their counterclaims.

The District Court entered partial summary judgment in favor of Asghari and Igleheart on their counterclaims, reserving the issue of damages for later trial.  The court granted summary judgment dismissing all of FDV's and Villeneuve's claims against Asghari and Igleheart.  Like the order granting summary judgment on FDV's and Villeneuve's claims against BOK, the May 24, 2018, order granting partial summary judgment on Asghari and Igleheart's motions did not specify the issues upon which it granted judgment, only finding that "the facts are not disputed in any material way ... and [the Court] enters summary judgment ... on all claims asserted against them." [Doc. 17-5]. The basis of the State Court's decision, however, is set forth in the transcript of the hearing at which it granted judgment in favor Asghari and Igleheart:

> And I think that the summary judgment I'm going to sustain is on behalf of the Plaintiffs, Shirin Asghari and Michael Igleheart, because it–from the documents I've looked at, and that's without testimony or evidence–reviewing the testimony and the evidence it appears fairly clear to me that there is not really a disputed fact about what occurred with Mr. Villeneuve.
>
> Seems real clear to me that he decided at some point he was going to remove her, hadn't paid the commissions the contract requires, did an exclusive agreement.  And it's not disputed, it was an exclusive agreement which gave another company the full right to sell all of his artistic products, pictures, or whatever he did, that FDV Artfolio had previously been selling and was probably about, from what I can read–it hasn't been disputed-- about 70 to 80 percent of what was being sold by Ms. Asghari.

16

[Doc. 18-4, pg. 23-24].

****

> Well, the Court finds that there are no questions of fact with regard to the Defendants' Counterclaim, Plaintiffs' Shirin Asghari and Michael Igleheart's Motion for Partial Summary Judgment on their counterclaims against the Plaintiff in material ways.

> First, that she was denied the first right of refusal to buy the non-owned percentage of the business. I say that because when he transferred the majority assets out of FDV Artfolio, LLC, it was tantamount to selling most of the inventory of the business to Patton. And those negotiations appear to have occurred prior and during September of the year in which she saw the email and culminated in November of that same year with an exclusive agreement which monetary amount was approximately $3 million to the benefit of Mr. Villeneuve.

> The Court also finds that there was a fiduciary relationship between Villeneuve and Asghari, which gave rise to a duty on his part to keep her apprised of those things because she had a 10 percent interest in the company, which he did not do. FDV Arttfolio, LLC, he did not do that. And it breached his fiduciary duty. And the breach was a direct cause of Asghari's damages.

> I find that it is uncontested by any competent, material evidence. He breached his fiduciary duty by entering into the exclusive licensing agreement with Patton, without talking to her about it, paying her the 10 percent that she was owed as one of the members of the company. And, I believe, that there was significant self-dealing involved with Mr. Villeneuve and his companies wherein he ran sales through another company, I think, in a concerted effort to deprive Ms. Asghari of her commissions over a significant period of time. And I believe it was done to divert profits and in derogation of her 10 percent interest.

[Doc. 18-4, pg. 29-30].

From the State Court record cited above, it appears clear to this Court that the granting of summary judgment as to FDV's claims against BOK, the claims of FDV against

17

Asghari and Igleheart and their claims against FDV did not determine FDV's rights to the funds being held by BOK.    What the State Court decided was that FDV and Villeneuve breached their contractual and fiduciary duty to Asghari and Igleheart.  No party in the State Court proceeding asked the Court for turnover of the disputed funds held by BOK, the gravamen of the action by the Trustee in this Court.  There is thus no preclusive effect to bar the Trustee's action.

## VI. Conclusion

The Court finds that the $118,963.68 being held by Defendant, BOKF, N.A., is property of the Bankruptcy Estate; that the State Court Judgments (Orders) entered in the Oklahoma County District Court Case Nos. CJ-2012-7757 and CJ-2013-229 are not entitled to preclusive effect barring the Trustee's action in this Court; and pursuant to Fed. R.Bankr.P. 7056 and based upon the undisputed material facts the Trustee is entitled to recover in this action for turnover brought pursuant to 11 U.S.C. § 542(a) as against Defendant BOKF, N.A.  Accordingly,

**IT IS ORDERED** that *Plaintiff's Motion for Summary Judgment* [Doc. 17] be and the same is **Granted** and BOKF, N.A. is directed to effectuate the Turnover of said funds to the Trustee instanter.

# # #

18